## SCHILL *v.* GIPSON, et al.

Oct. 20, 1952

No. 38481          4 Adv. S. 20          60 So. 2d 593

*Luther Maples*, for appellant.

*Williams & Williams* and *Morse & Morse*, for appellees.

McGehee, C. J.

The plaintiff, Ellie H. Schill, sued the defendants, Alvin Gipson and Randall Gipson, for the purchase price of:

"3,000 L. ft. of pipe @ 5c ............................................................$150.00
" 588 L. ft. rail 588/3 8820‡ @ 5c............................... 441.00
" 32 Kiln trucks @ $10.00............................................. 320.00

"Total ........................................................................................$911.00"

and also:
" 68 H. P. engine.........................................................$300.00
" 9 lumber rollers................................................ 112.50

"Total ........................................................................................$412.50"

The defendant Alvin Gipson denied in both his answer and testimony that he either purchased or received any of the property hereinbefore mentioned, but his co-defendant Randall Gipson admitted that he purchased the first three items from one A. L. Redden and that the said items of property were delivered to him in settlement of a balance due him for lumber sold and delivered to the Slidell Lumber Industries, Inc. about two years prior thereto, that he had sold to the said corporation $1,200 worth of lumber in 1947, and that on June 23, 1949, when he purchased the property here in question there was a balance due him by this corporation in the amount of $600.86. The defendants both denied that either of them had received the last two items of property sued for and hereinbefore listed, and there was no proof to the contrary as to these two items. There was a verdict and judgment in favor of the defendants which denied a recovery for any of the amount sued for.

The proof disclosed without dispute that the three items of property received from A. L. Redden on the premises of the Slidell Lumber Industries, Inc. was pur-

suant to an advertisement in the *Times Picayune* of New Orleans, Louisiana, stating that the said corporation had this and other articles of equipment for sale on said premises, and the notice so published was in the name of said corporation, followed by the words "A. L. Redden, Manager and Salesman", and giving his telephone number. The defendants called the said telephone number and Mrs. Redden answered the phone. She put the defendants in touch with Mr. Redden who was at a fishing camp. He thereafter accompanied them to the premises of the Slidell Lumber Industries, Inc. where they observed a large signboard listing these and a number of other articles for sale in the name of the corporation and W. L. Redden "Manager and Salesman".

There were four issues involved at the trial, (1) whether the plaintiff, Ellie H. Schill, owned the property individually and A. L. Redden was in charge of the same as his agent for the purpose of making the sale; (2) whether the property belonged to the Slidell Lumber Industries, Inc., of which Schill was the then President; (3) whether the plaintiff Schill, who permitted this property to be advertised for sale in the *Times Picayune* and on the premises of the corporation, can be allowed to say that A. L. Redden, who was listed as manager and salesman, was without authority to sell and deliver the property in settlement of the indebtedness alleged to be owing to one of the defendants by the corporation in the name of which it was advertised for sale, with the acquiescence of the plaintiff as president of said corporation, in view of the rule that where one of two innocent persons must sustain a loss the same must be borne by the one who placed Redden in position to make the sale; and (4) whether or not the corporation was actually indebted to the defendant Randall Gipson in the sum of $600.75, or any other sum, at the time of the purchase of said property from the agent Redden.

(**Hn 1**) We do not have the benefit of Redden's version as to the fact or extent of his agency in the premises, or

as to who owned the property in question, since he died prior to the trial. If the property actually belonged to the plaintiff individually instead of to the corporation of which he was president, then of course Mr. Redden, whom the plaintiff admits was his own agent as an individual and in charge of the property for sale, would not have had authority to sell and deliver the property to the defendant Randall Gipson in settlement of a debt that the corporation may have owed to him, unless he was clothed with such authority by reason of being held out by the corporation as its agent to sell the same, with the acquiescence of the plaintiff who was its president, and it was for the consideration of the jury as to whether or not there were sufficient facts and circumstances to show that if the plaintiff received his bill of sale for the same some two years or more prior to the sale in question from Redden to Gipson the plaintiff had thereafter transferred the property to the corporation, since the plaintiff as president of the corporation was permitting it to be advertised for sale as the property of the corporation through the agent Redden as manager and salesman for the corporation.

Then, too, the Gipsons testified that no demand was made upon them by the plaintiff to pay him personally for the property or otherwise until the suit was filed a few months after the sale by Redden to Gipson. This testimony was disputed by the plaintiff, who also testified that no demand had been made on the corporation to pay the alleged indebtedness of $600.85 to Gipson from the time the same was incurred in 1947 until the sale of the property to the alleged creditor on June 23, 1949. However, the corporation was during a portion of that period in process of liquidation, and at the time of the sale the corporation was undertaking to sell this and its other equipment in furtherance of the liquidation, and apparently with the acquiescence of the plaintiff, who was president of the corporation, as aforesaid.

What we have said above is applicable to the second

and third issues hereinbefore stated; and as to the fourth issue, there was a disputed issue of fact presented to the jury in that the defendant Randall Gipson testified that the $600.85 due him had never been paid, and that the two endorsed and cancelled checks introduced by the plaintiff, aggregating approximately $665, amounted to only a partial payment for the $1,200 worth of lumber sold and delivered to the corporation in 1947, and leaving the balance of $600.85, including the interest for two years, due the defendant as claimed, the plaintiff having testified that the two checks were in full settlement of the corporation's account with the said defendant.

In other words, it appears from all of the facts and circumstances that the issues of fact were properly submitted to the jury under testimony pro and con, and we are unable to say that the plaintiff was entitled to a directed verdict or that the conclusion of the jury was contrary to the overwhelming weight of the evidence.

(Hn 2) It is also assigned as error the admission of the testimony as to what the agent Redden said out of court as to the fact and the extent of his agency and authority when selling the property to the defendant Randall Gipson. We do not think that the rule as to the inadmissibility of such testimony is applicable where the plaintiff himself testified that Redden was his agent and in charge of the property for sale, and where the proof shows on the other hand that the plaintiff, as president of the corporation, held out the agent as the manager and salesman of the property as belonging to the corporation in that he acquiesced in the advertisement for sale of the same in the newspaper and on the premises as the property of the corporation.

From the foregoing views, it follows that we are of the opinion that we are not justified in reversing the case for a new trial, and that the judgment appealed from should be affirmed.

Affirmed.

*Hall, Lee, Arrington* and *Ethridge,* JJ., concur.